FILED IN CHAMBERS
U.S.D.C. - Atlanta

APR 23 2012

By: James ~~~~~
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | CRIMINAL CASE NO. |
| v. | 1:11-CR-350-ODE-RGV |
| TERRANCE STEVENSON | |

ORDER

This criminal case is currently before the Court on Magistrate Judge Russell G. Vineyard's Report and Recommendation ("R&R") [Doc. 31] filed on March 7, 2012, which recommended denying Defendant Terrance Stevenson's motion to suppress statements [Doc. 12] and motion to suppress suggestive identifications [Doc. 13]. On March 21, 2012, Defendant timely filed his objections to the R&R [Doc. 35]. For the following reasons, Defendant's objections [Doc. 35] are OVERRULED, Judge Vineyard's R&R [Doc. 31] is ADOPTED IN ITS ENTIRETY, and Defendant's motions to suppress statements and suggestive identifications [Docs. 12, 13] are DENIED.

I. Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1), the Court must conduct a de novo review of those portions of the R&R to which Defendant has timely and specifically objected. The Court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); United States v. Raddatz, 447 U.S. 667, 673-74 (1980). However, for a party's objections to warrant de novo review, he "must clearly advise the district court and pinpoint the specific findings that

[he] disagrees with." United States v. Schultz, 565 F.3d 1353, 1360 (11th Cir. 2009). The United States Court of Appeals for the Eleventh Circuit has noted that "[p]arties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988).

The remainder of the R&R, to which neither party offers specific objections, will be assessed for clear error only. See Tauber v. Barnhart, 438 F. Supp. 2d 1366, 1373 (N.D. Ga. 2006) (Story, J.) ("[I]ssues upon which no specific objections are raised do not so require de novo review; the district court may therefore 'accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge[,]' applying a clearly erroneous standard.") (quoting 28 U.S.C. § 636(b)(1)).

II. Discussion

    A. Factual Background

Defendant has not objected to Judge Vineyard's findings of fact as stated in the R&R. The Magistrate's version of the facts is not clearly erroneous and therefore is adopted by this Order. Because the factual background is laid out in detail in the R&R, it is not necessary to recite all of the facts again here. Relevant facts will be discussed below in the analysis of Defendant's objections and the review of the R&R.

    B. Motion to Suppress Suggestive Identifications

In the R&R, Judge Vineyard recommended denying Defendant's motion to suppress the out-of-court identification evidence that

2

resulted from photographic line-ups conducted by detectives of the DeKalb County Police Department. The Magistrate noted that the admissibility of an out-of-court identification is determined through a two-part analysis: first, the Court must determine if the original identification procedures were unduly suggestive. Next, and only if the answer to the first part is yes, the Court must determine whether, under the totality of the circumstances, the identification was nonetheless reliable. <u>United States v. Diaz</u>, 248 F.3d 1065, 1102 (11th Cir. 2001).

Based on the facts presented at the evidentiary hearing, Judge Vineyard concluded that the photographic line-up was not unduly suggestive and therefore did not address the second prong of the analysis. The R&R concluded the line-up was not unduly suggestive despite Defendant's arguments that in the line-up, "he is the only individual with his head tilted and appearing smaller than the other photos[,] . . . his photo is one of two where there is a lock of hair on the forehead and [] the background and other features of the photo also make him stand out." [R&R, Doc. 31, at 12-13 (quoting Defendant's post-hearing brief)(internal citations and quotation marks omitted)].

In his objections, Defendant simply repeats arguments made in his post-hearing brief submitted to, and addressed by, Judge Vineyard. Defendant's objections consist of only two paragraphs, and state in relevant part:

> Mr. Stevenson's is the only photo in which the person's head is noticeably tilted to the side. Govt. Ex. 3. It one of only two photos in which any lock of hair is on the person's forehead. *Id.* Mr. Stevenson's head appears smaller than the others as if he is farther away from the camera. *Id.* Taken as a whole, Mr. Stevenson's photo is distinguishable from the others in several

3

respects so as to make him stand out. Accordingly, the
magistrate judge should have concluded that the array
was unduly suggestive and proceeded to conduct a review
of whether the identifications were reliable.

[Doc. 35 at 1-2]. Defendant's objections do not point to any fact or factor that the Magistrate failed to consider in the R&R, nor does Defendant cite to any authority in which a court concluded that a line-up conducted under similar circumstances was unduly suggestive.

This Court agrees with Judge Vineyard. The photographic array consists of six black and white photographs of African-American males. The photographs each depict African-American males of similar age, hairstyle, body build, and skin complexion. [Gov. Ex. 3]. In each photo, the individual depicted has some facial hair. Each photograph is a facial shot, not a side view, and each depicts the same profile consisting of the shoulders, neck, and face [Id.]. The individuals all appear to be clothed similarly, though little clothing is visible in the headshots. The photographs are all the same size, and the subjects themselves occupy approximately the same amount of space in each photograph. [Id.].

The Eleventh Circuit and other courts have held that if the subjects in a lineup have "substantial similarity in facial features, complexion, facial hair, and general body type and appearance," the lineup is not unduly suggestive. United States v. Smith, 148 F. App'x 867, 874-75 (11th Cir. 2005) (per curiam). A defendant in a lineup does not have to be surrounded by others identical in appearance, and a lineup is not unduly suggestive merely because the defendant's photograph can be distinguished

from others. Id.; see also Cikora v. Dugger, 840 F.2d 893, 896-97 (11th Cir. 1988) (district court did not clearly err by admitting identification where only defendant's photograph in lineup had height markings in background and defendant was a different race than several other subjects); United States v. Gay, 423 F. App'x 873, 877 (11th Cir. 2011) (per curiam).

Defendant has not alleged that the conduct of the detective that administered the line-up caused it to be unduly suggestive as a result of suggestive comments or other pressure to choose one of the photos. Indeed, the Magistrate conducted a thorough review of the procedure used by the detective and concluded that Defendant "failed to show that the presentation of the photo array was tainted by any suggestive comments by the DCPD detectives." [Doc. 31 at 17].

Defendant has failed to carry his burden of proving that the identification procedure was impermissibly suggestive. Cikora, 840 F.2d at 895. Thus, the motion to suppress identifications [Doc. 13] is DENIED.

C. Motion to Suppress Statements

Defendant made incriminating statements on June 7, 2011 during a custodial interrogation conducted in Coweta County by detectives of the Opelika, Alabama police department [R&R, Doc. 31 at 21]. He moved to suppress all statements made on that day on the basis that his waiver of his Miranda rights was not voluntary. The Magistrate concluded that Defendant validly waived his Miranda rights after being advised of them by a detective and signing a waiver form which contained a written advisement of his rights.

As stated in the R&R, the validity of a <u>Miranda</u> waiver requires the government to show that the waiver satisfied two separate elements: "a valid waiver of *Miranda* rights must not only be voluntary; it must also be *intelligently* made." <u>Miller v. Dugger</u>, 838 F.2d 1530, 1538 (11th Cir. 1988).

In his objections, Defendant objects to Judge Vineyard's conclusions that the waiver was knowing and voluntary. Defendant contends that his "demeanor and inconsistent statements [make clear] that he was suffering from some mental illness or difficulty that interfered with his ability to knowingly and voluntarily waive his rights." [Doc. 35 at 2]. Specifically, Defendant states that:

> During the interview, [Defendant] was emotional and crying, and told the officers he did not want to eat food provided by the jail or officers because he believed he was or could be being poisoned. He told them there were people trying to get him. He also told them alternately that he was trying to get away from Tennessee, to Tennessee and to Washington to the White House to speak to the president.

[Doc. 35 at 2 (internal citations to transcript omitted)].

The Court agrees with the R&R, and will discuss each element of the waiver in turn. First, "the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." <u>United States v. Patterson</u>, No. 1:06-CR-500-1-TWT, 2007 WL 2331080, at *3 (N.D. Ga. Aug. 10, 2007) (Thrash, J.). In his objections, Defendant makes no allegation that the Opelika police department detectives intimidated, coerced, or deceived Defendant in order to obtain his waiver of his <u>Miranda</u> rights. In <u>Moore v. Dugger</u>, 856 F.2d 129 (11th Cir. 1988), the United States

6

Court of Appeals for the Eleventh Circuit held that a confession was voluntary despite

> . . . testimony which showed that [the defendant] had an IQ of 62, functioned at the intellectual level of an eleven-year old, and was classified as educable mentally handicapped. Petitioner also asserts that at the time he confessed, he had been without food or sleep for twenty-five to thirty hours. However, while we must take into account petitioner's mental limitations, to determine whether through susceptibility to surrounding pressures or inability to comprehend the circumstances, the confession was not a product of his own free will, mental deficiencies of a defendant, by themselves, are not sufficient to render a confession involuntary. To establish that his confession was involuntary, petitioner must also establish police coercion.

Id. at 132. Here, the lack of police coercion requires the Court to reject Defendant's argument that the waiver was involuntary. See also United States v. Barbour, 70 F.3d 580, 585 (11th Cir. 1995) ("The fact that a defendant suffers a mental disability does not, by itself, render a waiver involuntary; there must be coercion by an official actor.").

Next, the Court evaluates Defendant's arguments about his mental state as they pertain to the second element of the waiver analysis, which requires that "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Patterson, 2007 WL 2331080, at *3. The Magistrate concluded that Defendant knowingly waived his rights, noting that "he did not ask for clarification, stop the interview, request counsel, or otherwise indicate in any way that he did not understand his rights or the consequences of his waiver" after being read his Miranda rights by the detectives [Doc. 31 at 24]. The R&R further states that Defendant:

7

> . . . acknowledged that he understood his rights and Detective Hamby even took the time to thoroughly explain certain words contained in the waiver portion of the form prior to [Defendant] Stevenson signing it and agreeing to waive his rights. (Tr. at 15; Gov. Ex. 1). Moreover, Stevenson's interaction with the detectives reveals that he was able to provide clear, coherent, and comprehensible responses to their questions. (Tr. at 10-11). In fact, Stevenson's invocation of his Miranda rights and request to speak to counsel after he was transported to DeKalb County indicate that he fully understood and was aware of the consequences of waiving his rights.

[Doc. 31 at 26]. The Court agrees with Judge Vineyard. Defendant's objections to the R&R appear to take the detective's testimony about Defendant's behavior and statements at the hearing out of context. The detective specifically testified that Defendant's comments about getting away from Tennessee but visiting Nashville, to visit his sister, made sense during the interrogation [Tr., Doc. 24 at 23].

Similarly, there is no evidence that Defendant's emotional state, as evidenced by his crying, impaired his awareness of his rights at stake. Defendant urges the Court to infer from his "demeanor and inconsistent statements that he was suffering from some mental illness or difficulty that interfered with his ability to knowingly and voluntarily waive his rights." [Doc. 35 at 2]. However, in Barbour, the Court of Appeals held that "[a]lthough a defendant's impaired mental state . . . may prevent that person from understanding the nature of his or her waiver, this is not the case here. The district court found there was no evidence that Barbour's severe depression interfered with his ability to think clearly or with his understanding of the charges made against him." Barbour, 70 F.3d at 585. There is no evidence supporting the inference Defendant urges. The Court concludes that

Defendant's waiver was made knowingly and intelligently. Because it was also voluntary, as discussed <u>supra</u>, Defendant validly waived his <u>Miranda</u> rights and the incriminating statements he made to the Opelika detectives during his interrogation need not be suppressed.[1]

III. <u>Conclusion</u>

Having reviewed <u>de novo</u> those portions of the R&R to which Defendant objected, Defendant's objections [Doc. 35] are OVERRULED, Judge Vineyard's R&R [Doc. 31] is ADOPTED IN ITS ENTIRETY, and Defendant's motions to suppress statements and suggestive identifications [Docs. 12, 13] are DENIED.

SO ORDERED this 23 day of April, 2012.

ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE

---

[1] The Magistrate also analyzed the voluntariness of the statements themselves, as opposed to the waiver. Defendant made no objection to the Magistrate's conclusion that the statements were voluntarily made, and the Court does not find that conclusion clearly erroneous.